UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RODDY A. GUZMAN, | ) | 1:09-CV-00311-LJO DLB HC |
| | ) | |
| Petitioner, | ) | FINDING AND RECOMMENDATION |
| | ) | REGARDING PETITION FOR WRIT OF |
| v. | ) | HABEAS CORPUS |
| | ) | |
| MIKE MCDONALD, | ) | OBJECTIONS DUE WITHIN THIRTY (30) |
| | ) | DAYS |
| Respondent. | ) | |
| _____ | ) | |

Petitioner Roddy A. Guzman ("Petitioner") is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**Procedural History**

On April 24, 2007, a jury convicted Petitioner of one count of assault with a deadly weapon (Count Two, Cal. Pen. Code, § 245(b)[1]); one count of terrorist threats (Count Five, § 422); two counts of possession of a firearm by a felon (Count Six, §§ 12021(a)(1) and Count Seven, 12021.1(a)); one count of spousal abuse (Count Eight, § 273.5(a)); one count of assault with force likely to cause great bodily injury, (Count 9, § 245(a)(1). See Respondent ("Resp't") Lodged 4 at 3, Court of Appeals 2008 Decision; Clerk's Transcript ("CT") at 708-14. Additionally, as to Counts Three and Four, the jury found Petitioner guilty of the lesser included offenses of misdemeanor battery on a spouse (§ 243(e)(1)) and misdemeanor false imprisonment (§ 236) respectively. See

---

[1] Unless otherwise indicated, all statutory references are to the California Penal Code.

1  Resp't Lodged 4 at 3; CT at 712-13.  The jury also found two additional enhancements that

2  Petitioner had:  (1) personally used a firearm in committing the offenses charged in Counts Two and

3  Five, (§ 12022.5(a)); and (2) personally inflicted great bodily injury in committing Counts Eight and

4  Nine (§ 12022.7(a)).  See Resp't Lodged 4 at 3; CT at 709-10, 711-12.

5  In a bifurcated proceeding, the trial court found that Petitioner had two prior strike

6  convictions.  See Resp't Lodged 4 at 3; CT at 708-714.  The trial court sentenced Petitioner to a total

7  term of 102 years to life.  See Resp't Lodged 4 at 3; CT at 713-714.

8  On April 10, 2008, in its opinion following Petitioner's direct appeal, the California Court of

9  Appeal affirmed the judgment.  See Resp't Lodged 4.  Petitioner filed a petition for review in the

10 California Supreme Court on August 13, 2007.  See Resp't Lodged 16.  The California Supreme

11 Court denied the petition for review on September 19, 2007.  See Resp't Lodged 17.

12 Petitioner filed the instant petition for writ of habeas corpus in the United States District

13 Court, Eastern District of California on July 22, 2009.  See Doc. 1.  Respondent filed an answer on

14 March 11, 2010.  See Doc. 22.  Petitioner filed a traverse on April 6, 2010.  See Doc. 28.

**Factual Background[2]**

16 The Court adopts the California Court of Appeal's summation of the facts surrounding

17 Petitioner's crime and conviction:

18 > [Petitioner] and Lorena Guzman were married on September 13, 2002; she
> filed for dissolution of marriage on February 16, 2005. Lorena had children by a prior
19 > marriage.  One of her children, A., lived with Lorena and [Petitioner].

20 > In November 2002, [Petitioner] accused Lorena of cheating on him.  She
> denied the accusation. [Petitioner] struck her in the face and then stabbed her in the
21 > stomach with a steak knife.  The wound bled, but it was not a deep wound.

22 > [Petitioner] took Lorena to the hospital, where she told staff she was depressed
> and tried to commit suicide.  They placed Lorena on a 72-hour psychiatric hold.
23 > When Lorena was released, [Petitioner] picked her up from the hospital. She told
> [Petitioner] he should leave, but he apologized and she forgave him.  Lorena did not
24 > tell her family that she never tried to commit suicide or that [Petitioner] had stabbed
> her.

---

[2] These facts are derived from the California Court of Appeal's opinion issued on April 10, 2008.  See Lodged Doc. 4.
Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, a determination of fact by the state court is presumed
to be correct unless Petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); see Davis
v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004); Moses v. Payne, 555 F.3d 742, 746 n. 1 (9th Cir. 2009).

In December 2003, Lorena learned [Petitioner] was having an affair with another woman. She confronted [Petitioner] and he left the house. Lorena followed him, smashed the windows of his car, threw a soda can at him, and "bumped" his car with hers. Lorena pled guilty to misdemeanor vandalism, served jail time, and was placed on probation.

In August 2004, Lorena and [Petitioner] were living in Mojave with Lorena's mother, Otilia Vire. One evening Lorena and [Petitioner] started arguing. Lorena took [Petitioner's] cell phone, broke it, and threw it at him. [Petitioner] pulled Lorena's hair, accused her of cheating on him, and struck her three times on the side of her head with a bottle. Vire took Lorena to the hospital. Lorena received 12 stitches to close the laceration around her ear and on the side of her head. Officers took photographs of the injuries, but Lorena declined to press charges at that time. A few days later, Vire noticed Lorena had a black eye and bruises on her arms.

On February 7, 2005, Lorena went to bed at around 10:00 p.m. Her son, A., was asleep in his bedroom and [Petitioner] was in the living room drinking. The next morning Lorena was awakened by [Petitioner]. He was standing over her, yelling at her and pulling her hair. [Petitioner] was yelling that Lorena had invited men over the night before, had engaged in an orgy with them, and that he had witnessed everything while hiding in the bushes outside the house. [Petitioner] continued to push at Lorena and scream at her.

[Petitioner] then went to A.'s bedroom and began questioning the seven year old. A. was scared and Lorena feared for his safety. When Lorena tried to intercede, [Petitioner] shoved her away. [Petitioner] then pushed Lorena back into their bedroom and began pulling clothes from drawers and scattering them on the floor, claiming they were wet and dirty. When Lorena tried to tell [Petitioner] he was not making any sense, [Petitioner] punched her in the face twice with a closed fist.

Lorena called [Petitioner's] parents to come to the home because [Petitioner] was acting strangely. [Petitioner] pulled out the phone line, broke the phone, and continued to accuse Lorena. After about an hour, [Petitioner's] parents arrived; they stayed only 10 minutes. As soon as his parents left, [Petitioner] again began arguing with Lorena.

[Petitioner] pushed Lorena back into their bedroom, shoved her to the floor, and held a gun to her head. A. was in the doorway. [Petitioner] was yelling at A. to tell him who had been in the house or else he would kill Lorena. [Petitioner] told A., "Don't lie to me." A. was scared; Lorena was crying. A. also heard [Petitioner] say, "Don't lie to me or else I'll go to your grandma's house and kill everybody." [Petitioner] left the house and Lorena tried to comfort A., who was distraught and crying.

When [Petitioner] returned, he had the gun tucked into his waistband and began punching Lorena in the face with a closed fist. Lorena's sister, Maria Ponce, arrived. When she entered the house, Ponce saw a shotgun and two handguns on the couch. Ponce found Lorena lying on the floor where she had fallen after being struck by [Petitioner]; Lorena was bleeding from the mouth.

Lorena told Ponce to grab A. and leave the house. Ponce left with A. Ponce drove to her sister-in-law's house. Her sister-in-law, Sara Kachirisky, called 911. A. told Kachirisky that [Petitioner] had hit his mother and had put a gun to her head.

[Petitioner] was still arguing with Lorena after Ponce and A. left when they

were interrupted by a knock at the door.  A neighbor, Oscar Sanchez, told them that the police had been called.  [Petitioner] grabbed Lorena by the hair and tried to drag her to his car.  Lorena eventually climbed into the car, but when [Petitioner] released her she tried to run.  [Petitioner] grabbed her arm and stopped her, pulled her into the car, and drove away.

Lorena tried to jump out of the car at an intersection, but [Petitioner] accelerated.  [Petitioner] finally pulled over to the side of the road about 20 miles away from their home.  [Petitioner] left the car saying "he was done with it."

Deputy Gregory Rutter stopped Lorena shortly after [Petitioner] left the car.  There had been an advisory issued to be on the lookout for the car.  Lorena told Rutter that [Petitioner] had held a gun to her head and had threatened to shoot her.

Shortly before locating and stopping the car Lorena now was driving, Rutter and his partner, Deputy Patrick McNeal, had responded to a dispatch.  The dispatch stated, "an unknown circumstance, victim of a spousal abuse is being held against her will, and the suspect was threatening to kill her."  The suspect was identified as [Petitioner], a parolee at large, who had access to two handguns.

After arriving at the [Petitioner's] home, the deputies knocked and identified themselves.  There was no answer.  They looked through a window that did not have the shades drawn and saw some bedroom furniture.  The window was unlocked. "[N]ot knowing if the victim was injured inside the house, if she was being held at gunpoint or held against her will by the suspect," Rutter and McNeal entered the home through the window.

Rutter and McNeal made a quick sweep through the home to determine if Lorena was inside injured or being held against her will.  Rutter opened a closet door and saw a loaded .45-caliber handgun clearly visible inside. McNeal looked under a bed, which had a two- to three-foot clearance from the floor.  Under the bed was a loaded shotgun.

At trial, Lorena's supervisor at Lancaster Community Hospital and a coworker both testified.  Lorena's supervisor testified that on two occasions Lorena had called in "sick," but when she returned to work there were multiple bruises on her face.  Lorena confided to her supervisor that she and [Petitioner] had physical fights.

Lorena's coworker testified to seeing bruises on Lorena's face, chest, and arms once or twice a week beginning after she married [Petitioner].  Lorena told her coworker that the bruises were inflicted by [Petitioner].  Lorena also confided that [Petitioner] had stabbed her, but that she had lied to hospital staff about that incident.

Lorena's mother, Vire, testified that when [Petitioner] and Lorena lived with her, she saw [Petitioner] strike Lorena.  On one occasion, [Petitioner] had Lorena on the porch and was pulling her hair, kicking her in the rib cage, and pointing a gun at her head.

A. testified that he had seen [Petitioner] strike his mother on several occasions.  A. also testified that he knew [Petitioner] had at least three guns in the home-two small ones and a big one.  District Attorney Investigator Patricia Poeschel previously had interviewed A. Poeschel testified that during their interview, A. told her he had seen [Petitioner] strike his mother on several occasions; [Petitioner] had at least three guns; and [Petitioner] had threatened to kill his mother and other family members.

See Resp't Lodged 4 at 1-3.

## Discussion

**I.   Jurisdiction and Venue**

A person in custody pursuant to the judgment of a state court may file a petition for a writ of habeas corpus in the United States district courts if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, n.7 (2000). Venue for a habeas corpus petition challenging a conviction is proper in the judicial district in which the petitioner was convicted. 28 U.S.C. § 2241(d).

As Petitioner asserts that he is in custody pursuant to a State conviction which violated his rights under the United States Constitution, the Court has jurisdiction over this action. 28 U.S.C. § 2254(a). Petitioner was convicted in Kern County, California, which is within the Eastern District of California, and thus venue is proper in the Eastern District. 28 U.S.C. § 84; 28 U.S.C. § 2241(d).

**II.   Standard of Review**

On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment. Lindh v. Murphy, 521 U.S. 320, 326-27 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of AEDPA and is consequently governed by its provisions. See Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Thus, the petition "may be granted only if [Petitioner] demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Irons v. Carey, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)), overruled in part on other grounds, Hayward v. Marshall, 603 F.3d 546, 555 (9th Cir. 2010) (en banc); see Lockyer, 538 U.S. at 70-71.

Title 28 of the United States Code, section 2254 remains the exclusive vehicle for Petitioner's habeas petition as Petitioner is in the custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. See Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-27 (9th Cir. 2006) overruled in part on other grounds, Hayward,

1  603 F.3d at 555.  As a threshold matter, this Court must "first decide what constitutes 'clearly
2  established Federal law, as determined by the Supreme Court of the United States.'"  Lockyer, 538
3  U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is "clearly established Federal
4  law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's]
5  decisions as of the time of the relevant state-court decision."  Id. (quoting Williams, 529 U.S. at
6  412).  "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal
7  principle or principles set forth by the Supreme Court at the time the state court renders its decision."
8  Id.  Finally, this Court must consider whether the state court's decision was "contrary to, or involved
9  an unreasonable application of, clearly established Federal law."  Id. at 72 (quoting 28 U.S.C. §
10 2254(d)(1)).  "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state
11 court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or
12 if the state court decides a case differently than [the] Court has on a set of materially
13 indistinguishable facts."  Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72.  "Under the
14 'unreasonable application clause,' a federal habeas court may grant the writ if the state court
15 identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies
16 that principle to the facts of the prisoner's case."  Williams, 529 U.S. at 413.  "[A] federal court may
17 not issue the writ simply because the court concludes in its independent judgment that the relevant
18 state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that
19 application must also be unreasonable."  Id. at 411.  A federal habeas court making the
20 "unreasonable application" inquiry should ask whether the State court's application of clearly
21 established federal law was "objectively unreasonable."  Id. at 409.

22      Petitioner bears the burden of establishing that the state court's decision is contrary to or
23 involved an unreasonable application of United States Supreme Court precedent.  Baylor v. Estelle,
24 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states,
25 Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court
26 decision is objectively unreasonable.  Clark v. Murphy, 331 F.3d 1062, 1072 (9th Cir. 2003) ("While
27 *only* the Supreme Court's precedents are binding on the Arizona court, and only those precedents
28 need be reasonably applied, we may look for guidance to circuit precedents"); Duhaime v.

Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999) ("[B]ecause of the 1996 AEDPA amendments, it can no longer reverse a state court decision merely because that decision conflicts with Ninth Circuit precedent on a federal Constitutional issue. . . .  This does not mean that Ninth Circuit case law is never relevant to a habeas case after AEDPA.  Our cases may be persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help us determine what law is 'clearly established'").  Furthermore, AEDPA requires that the Court give considerable deference to state court decisions.  The state court's factual findings are presumed correct.  28 U.S.C. § 2254(e)(1).  A federal habeas court is bound by a state's interpretation of its own laws.  Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002).

The initial step in applying AEDPA's standards is to "identify the state court decision that is appropriate for our review."  Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005).  Where more than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last reasoned decision.  Id. (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) for the presumption that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order).  Thus, a federal habeas court looks through ambiguous or unexplained state court decisions to the last reasoned decision to determine whether that decision was contrary to or an unreasonable application of clearly established federal law.  Bailey v. Rae, 339 F.3d 1107, 1112-13 (9th Cir. 2003).

In the instant petition, Petitioner raises three grounds for relief.  Petitioner raised all three grounds through direct appeal to the California Court of Appeal, which affirmed the judgment in a reasoned opinion.  See Resp't Lodged 4.  Petitioner's claims were then raised in a petition for review to the California Supreme Court, which summarily denied review.  See Resp't Lodged 17.  The California Supreme Court, by its "silent order" denying review is presumed to have denied the claim for the same reasons stated in the opinion of the lower court.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  Therefore, the Court "look[s] through" this decision to the last reasoned decision, in this case, that of the California Court of Appeal, and analyzes whether the state court's decision was an objectively unreasonable application of federal law.  See Nunnemaker, 501 U.S. at 803-804.

**III.   Review of Petitioner's Claims**

Petitioner's Ground One asserts that the trial court abused its discretion when it denied his motion to dismiss a prior "strike" conviction. See Petition at 8-11.  In Ground Two, Petitioner contends the trial court erred in denying his motion to suppress evidence obtained from a warrantless search in violation of his rights under the Fourth Amendment to the United States Constitution. See Petition at 5.  Petitioner's Ground Three asserts the trial court's sentencing terms violate his rights afforded by the United States Constitution's Eighth and Fourteenth Amendments and the California Constitution. See Petition at 6.

**A.     Ground One: The Trial Court's Denial of Petitioner's <u>Romero</u> Motion to Dismiss A Prior Conviction**

Petitioner claims that when the trial court imposed his sentence in 2007, the court "abused its discretion" in not striking a prior "strike" conviction resulting in a violation of his due process rights.[3]  See Petition at 8-9.  More specifically Petitioner claims that the trial court, when imposing his current sentence should have dismissed his prior strike resulting from his 1999 plea and resulting conviction for violation of § 186.22, (active participation with gang), because the violation was not designated as "strike" under California law at the time of the 1999 plea. See Petition at 11.  Though, California Three Strikes Law was later amended in 2000 to include § 186.22 violations as strikes, Petitioner contends, that his acceptance of his plea in 1999 was conditioned on the trial court's implicit promise that the § 186.22 conviction would never be used as a strike. See Petition at 9-11.

The California Court of Appeal found that the trial court did not abuse its discretion in denying Petitioner's motion under <u>Romero</u>, and that the sentence was valid under state law, based on the following reasoning:

> . . . [Petitioner] brought a motion pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.  He contends it was an abuse of discretion for the trial court not to dismiss his prior strike conviction for violating section 186.22, subdivision (a).

---

[3] The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002).  Where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003).  Here because the Court of Appeal's reasoned opinion did not address Petitioner's federal constitutional issue raised in Ground One, this Court independently reviews the record.

> He claims that when he pled to the offense in 1999, it was not a strike offense, and he claims he implicitly was promised the conviction never would be used as a strike to enhance his sentence. . . . The trial court denied the motion.
>
> There is no support in the record for [Petitioner's] assertion that he implicitly was promised his 1999 conviction for violating section 186.22, subdivision (a) never would be used to enhance his sentence. The transcript of the hearing in 1999 reflects that the offense was not a strike in 1999, but there was no discussion regarding limiting the ability to use the offense to enhance a sentence in the future, regardless of any changes in the law. The trial court reviewed the 1999 transcript and found there was no indication of any agreement preventing use of the 1999 conviction for future sentencing purposes.
>
> Also, on March 7, 2000, voters passed Proposition 21, which made convictions for violating section 186.22, subdivision (a) strikes for purposes of enhancing sentences for future convictions. (§ 667.1; *People v. James* (2001) 91 Cal.App.4th 1147, 1149.) At the time [Petitioner] committed his current offenses, the offense for which he previously had been convicted in 1999 was included in the list of offenses that qualified as strikes for purposes of sentence enhancement.
>
> As for the denial of [Petitioner's] Romero motion, section 1385 permits the trial court to exercise its discretion and dismiss a prior strike conviction if the dismissal is in furtherance of justice. (*Id*., subd. (a); *People v. Garcia* (1999) 20 Cal.4th 490, 499, 502; *People v. Williams* (1998) 17 Cal.4th 148, 158; *People v. Superior Court (Romero)*, *supra*, 13 Cal.4th at pp. 529-530.) A trial court's failure to dismiss or strike a prior conviction pursuant to section 1385 is subject to appellate review under the deferential abuse of discretion standard. (*People v. Carmony* (2004) 33 Cal.4th 367, 374-376.)
>
> To show an abuse of discretion, the appellant must demonstrate the trial court's decision "was irrational or arbitrary. It is not enough to show that reasonable people might disagree about whether to strike one or more of [the] prior convictions." (*People v. Myers* (1999) 69 Cal.App.4th 305, 309-310.) When the record shows the trial court considered relevant factors and acted to achieve legitimate sentencing objectives, the decision will not be disturbed on appeal. (*Id*. at p. 310.)
>
> Here, a review of the record discloses the trial court reviewed the motion and the People's opposition, heard oral argument, considered all relevant factors, and then denied the motion. [Petitioner's] prior record, his failure on probation and parole, and the circumstances of the current offenses certainly support the trial court's decision. The trial court acted to achieve legitimate sentencing objectives and did not abuse its discretion in denying [Petitioner's] motion to dismiss the priors.

See Resp't Lodged 4 at 6-7.

In California, trial courts have the discretion to dismiss prior strikes in the interest of justice under California Penal Code section 1385(a). People v. Superior Court (Romero), 13 Cal.4th 497, 529-30 (1996). In ruling on a motion to dismiss a strike, "the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the

defendant may be deemed outside the . . . spirit [of California's Three Strikes law], in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." People v. Williams, 17 Cal.4th 148, 161 (1998).

As a threshold matter, any relief sought by Petitioner based on issues of state law is unavailable as these claims are not cognizable on federal habeas review. Generally, a federal court may not review a State sentence that is within statutory limits. Walker v. Endell, 850 F.2d 470, 476 (9th Cir. 1987). "Absent a showing of fundamental unfairness," even a State court's "misapplication of its own sentencing laws does not justify federal habeas relief." Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994). In evaluating a State conviction, a federal court must defer to the State court's interpretation of applicable State sentencing laws. Bueno v. Hallahan, 988 F.2d 86, 88 (9th Cir. 1993).[4]

As to Petitioner's claim that the trial court's denial of his motion resulted in a denial of due process, Petitioner has not shown that his sentencing was fundamentally unfair. See Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994) ("Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief."). After thoroughly reviewing the record, the Undersigned agrees with the Court of Appeals finding that the record does not support Petitioner's contentions regarding any alleged future promise made by the trial court in 1999. See CT at 631-42.[5]

Additionally, Petitioner has failed to show the state court violated federal law in its application of California's Three Strikes law. It is well established that the Constitution forbids states from imposing punishment for an act which was not punishable when the act was committed. Weaver v. Graham, 450 U.S. 24, 28, (1981) (quoting Cummings v. Missouri, 4 Wall. 277, 325-26, 18 L.Ed. 356 (1867)). However, this prohibition does not preclude states from enacting recidivist statutes which enhance a criminal sentence based on prior criminal convictions if those statutes were

---

[4] In enacting the three strikes law, California made a reasoned decision that protecting public safety requires incapacitating criminals who have already been convicted of at least one serious or violent crime. See Ewing v. California, 538 U.S. 11, 25 26 (2003).

[5] The record reflects only that the sentencing court recognized the § 186.22 charge was not a strike as of the time of sentencing in February of 1999. See CT at 631 42.

in effect when the current triggering offense was committed. Parke v. Raley, 506 U.S. 20, 27, (1992); Weaver v. Graham, 450 U.S. 24, 30 (1981); United States v. Kaluna, 192 F.3d 1188, 1199 (9th Cir. 1999) (en banc) (citing United States v. Ahumada-Avalos, 875 F.2d 681, 683-84 (9th Cir. 1989) (per curium)).

Here, Petitioner's triggering offense involving domestic violence was committed in 2005, eleven years after the Three Strikes Law was enacted. By 2005, Petitioner had ample warning that his 1999 conviction could be used as a "strike" to increase the sentence for any subsequent felony. Thus, enhancement of his sentence by reason of the prior conviction and operation of the Three Strikes law was neither unexpected nor unconstitutional. See Parke, 506 U.S. at 27 ("[W]e have repeatedly upheld recidivism statutes against contentions that they violate constitutional strictures dealing with double jeopardy, ex post facto laws, cruel and unusual punishment, due process, equal protection, and privileges and immunities." (internal quotation marks and citations omitted)).

In light of the facts of this case, the state courts' determination that petitioner's sentence fell within the spirit of the "Three Strikes" statute and their determination that the trial court did not abuse its discretion were not objectively unreasonable.[6] Accordingly, Petitioner is not entitled to habeas relief on this claim.

### B. Ground Two: Denial of Motion to Suppress Evidence

Petitioner next asserts his Fourth Amendment rights were violated when the state court improperly denied his motion to suppress evidence gained from an unreasonable search. See Petition at 5, 12-13. According to Petitioner, law enforcement's search of his residence was unreasonable as there were no exigent circumstances of any kind which could have justified law enforcement's warrantless entry. See Petition at 12-13. Petitioner contends that all of the physical evidence and

---

[6] A sentence may violate due process under other circumstances, including, for example, if it is based on materially false or unreliable information or based on a conviction infected by constitutional error, see United States v. Hanna, 49 F.3d 572, 577 (9th Cir. 1995); Walker, 850 F.2d at 477, or if it is under the wrong statute, Murtishaw v. Woodford, 255 F.3d 926, 969 (9th Cir. 2001); accord Ballard v. Estelle, 937 F.2d 453, 456 67 (9th Cir. 1991). However, here Petitioner does not allege, nor is there any basis in the record for finding, that the sentence was based on materially false or unreliable information, or an unconstitutional conviction, or that it was imposed under the wrong statute.

observations produced as a result of the search should have been suppressed and that any part of the judgment pertaining to the firearms confiscated during the search must be set aside. See Petition at 13.

On direct appeal, the Court of Appeals upheld the trial court's ruling and found that the search was reasonable in that sufficient "exigent circumstances warranting entry in the home without a search warrant were present." See Resp't Lodged 4-5. Recounting the factual background of law enforcement's search of the residence, the Court of Appeals stated:

> . . . The officers testified at the motion to suppress that they had received a dispatch indicating that a victim of spousal abuse was being held against her will and the suspect, [Petitioner], was threatening to kill her. The officers also were aware from the dispatch that [Petitioner] was a parolee at large with access to two handguns.
>
> When the officers arrived at the address indicated in the dispatch, they knocked on the door a couple of times, but no one answered. At that point, officers looked through an open window and decided to enter through the window to determine if the victim was injured and unable to respond to their knock or being held against her will. After entering, the officers made a protective sweep through the home, looking for [Petitioner] and the victim. They looked in places where a person could hide or be hidden, such as in large closets, under a bed with a two- to three-foot clearance, and in the rooms of the home.
>
> At the suppression hearing, the defense did not question either officer or offer any evidence.
>
> Here, the officers knew that they had a parolee, [Petitioner], who was armed with two handguns. They knew they were entering a spousal abuse or domestic violence situation, with a female victim [Petitioner] was holding against her will and threatening to kill. A parolee possessing handguns, holding a victim against her will, and threatening to kill her, all constituted criminal offenses that were in progress. There is no evidence that the officers knew or had reason to believe that [Petitioner] had left the home with Lorena prior to their arrival. The officers did not look in any areas where a person could not be hidden, such as in drawers or cupboards, and conducted only a brief search of the premises to look for [Petitioner] and Lorena.
>
> Based upon the information communicated to the officers in the dispatch, they had reason to believe a female victim might be inside and seriously injured or prevented against her will from answering their knock. They also had reason to believe that a parolee, [Petitioner], had committed several criminal offenses that were still in progress. Their search was restricted to areas where a person could be hiding or lying injured.

See Resp't Lodged 4-5.

A federal district court cannot grant habeas corpus relief on the ground that evidence was obtained by an unconstitutional search and seizure if the state court has provided the petitioner with a "full and fair opportunity to litigate" the Fourth Amendment issue. Stone v. Powell, 428 U.S. 465,

494 (1976); Woolery v. Arvan, 8 F.3d 1325, 1326 (9th Cir.1993), cert denied, 511 U.S. 1057 (1994). The only inquiry this Court can make is whether petitioner had a fair opportunity to litigate his claim, not whether petitioner did litigate nor even whether the court correctly decided the claim. Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996); see also Gordon v. Duran, 895 F.2d 610, 613 (9th Cir. 1990) (holding that because Cal.Penal Code § 1538.5 provides opportunity to challenge evidence, dismissal under Stone was necessary).

The policy behind the Stone Court's analysis is that the exclusionary rule is applied to stop future unconstitutional conduct of law enforcement. Stone, 428 U.S. at 492. However, excluding evidence that is not untrustworthy creates a windfall to the defendant at a substantial societal cost. See Stone, 428 U.S. at 489-90; Woolery, 8 F.3d at 1327-28. Thus, the Ninth Circuit has described the rationale for this rule by saying:

> The holding is grounded in the Court's conclusion that in cases where a petitioner's Fourth Amendment claim has been adequately litigated in state court, enforcing the exclusionary rule through writs of habeas corpus would not further the deterrent and educative purposes of the rule to an extent sufficient to counter the negative effect such a policy would have on the interests of judicial efficiency, comity and federalism.

Woolery, 8 F.3d at 1326; see also Stone, 428 U.S. at 493-494.

In this case, Petitioner's Fourth Amendment claim was litigated through a suppression hearing in the Kern County Superior Court. See CT at 130-143. The trial court denied the motion. See CT at 143. Therefore, the state court provided Petitioner a "full and fair opportunity to litigate" his Fourth Amendment claim. Stone v. Powell, 428 U.S. 465, 494 (1976). Pursuant to Stone v. Powell, the Court cannot grant habeas relief on this ground.

**C.    Ground Three: Petitioner's Cruel and Unusual Punishment Claim**

Petitioner claims that his sentence of one hundred and two years to life in state prison amounts to cruel and unusual punishment under the Eighth and Fourteenth Amendments of the United States Constitution and the California Constitution.[7] See Petition at 14. According to

---

[7] While the Eighth Amendment prohibits "cruel and unusual punishment," the California Constitution prohibits "cruel or unusual punishment." See People v. Weddle, 1 Cal.App.4th 1190, 1196 n. 5 (1991). The Eighth Amendment, applies to the states through the Due Process Clause of the Fourteenth Amendment, and prohibits the infliction of "cruel and unusual

1  Petitioner, the sentence is disproportionate to his domestic violence commitment offenses because
2  the incident involved only "mutual combat between [himself] and the victim [and] only some
3  moderate injury . . . ." See Petition at 14.
4        On direct review, the California Court of Appeal rejected Petitioner's cruel and unusual
5  punishment claim.  The Court of Appeal rejected Petitioner's contention that "violence committed in
6  the context of a domestic dispute is less culpable than violence committed in other contexts."  See
7  Resp't Lodged 4 at 8.  The Court of Appeals found that petitioner's sentence was appropriate given:
8  (1)  the circumstances of his commitment offenses; (2) his status as a paroled felon and his unlawful
9  weapons possession; and (3) his "considerable record of prior convictions."  See Resp't Lodged 4 at
10  8.  The Court of Appeal also noted that Petitioner's sentence was imposed for his "current
11  convictions enhanced by his considerable recidivism."  Id.
12        To the extent petitioner's claim is premised on the California Constitution, it fails, since
13  federal habeas corpus relief will not lie to correct an alleged error in the interpretation or application
14  of state law.  See Estelle v. McGuire, 502 U.S. 62, 67  68 (1991).
15        Outside of the capital punishment context, the Eighth Amendment of the United States
16  Constitution "forbids only extreme sentences that are grossly disproportionate to the crime."
17  Graham v. Florida,      U.S.     ,      , 130 S.Ct. 2011, 2021, 176 L.Ed.2d 825 (2010) ( quoting
18  Harmelin v. Michigan, 501 U.S. 957, 1001, (1991) ("Harmelin") (Kennedy, J., concurring in part and
19  concurring in judgment)).  The United States Supreme Court held that the gross disproportionality
20  principle is the only relevant clearly established law applicable to an Eighth Amendment challenge to
21  a sentence under section 2254.  Lockyer v. Andrade, 538 U.S. 63, 73 (2003).  The threshold for an
22  inference of gross disproportionality is high.  Generally, so long as the sentence imposed by the state
23  court does not exceed statutory maximums, it will not be considered cruel and unusual punishment
24  under the Eighth Amendment.  United States v. McDougherty, 902 F.2d 569, 576 (9th Cir. 1990);
25  United States v. Mejia  Mesa, 153 F.3d 925, 930 (9th Cir. 1998) ("punishment within legislatively

___

punishment" on those convicted of crimes.  Wilson v. Seiter, 501 U.S. 294, 296  97, (1991) (citations omitted).

mandated guidelines is presumptively valid").

The United States Supreme Court has upheld a term of life with the possibility of parole for the offense of theft of $120.75 by false pretenses, under a recidivism statute which accounted for the defendant's two prior offenses of fraudulent use of a credit card and passing a forged check in the amount of $28.36. Rummel v. Estelle, 445 U.S. 263, 265, 285 (1980). This life sentence did not offend the gross proportionality principle of the Eighth Amendment. See Id. Likewise, in Harmelin v. Michigan, the Court held that a term of life in prison without the possibility of parole was not disproportionate to the crime of possession of 672 grams of cocaine. Harmelin, 501 U.S. 957, 1009 (1991). In Lockyer v. Andrade, 538 U.S. 63 (2003), the Court upheld a decision of the California Court of Appeal affirming a sentence of two consecutive terms of 25 years to life in prison for a "third strike" conviction of theft of $150 worth of video tapes. Such a sentence was not contrary to or an unreasonable application of the gross disproportionality principle. Id. at 73 74.

Petitioner's attempt to distinguish his commitment offense, personal circumstances, and resulting sentence from the Supreme Court's applicable precedent fails, as his offenses were actually more severe than those discussed. As the California Court of Appeal noted:

> [Petitioner] "glosses over and ignores the circumstances of his current offenses. He not only terrorized and harmed his wife, he threatened and terrorized her seven-year old son. He characterizes the circumstances as "mutual combat," a characterization we reject. At 5 feet 11 inches tall, 230 pounds, and in possession of firearms, we would not characterize [Petitioner's] actions as "mutual combat" against his unarmed wife and seven year old.

See Resp't Lodged 4 at 8. His is not "the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to inference of gross disproportionality." Harmelin, 501 U.S. at 1005; see also Eckert v. Tansy, 936 F.2d 444, 448 50 (9th Cir. 1991) (two consecutive sentences for first degree kidnapping with use of a weapon found constitutionally permissible). No relief is available for this claim.

### IV.    Certificate of Appealability

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-

El v. Cockrell, 531 U.S. 322, 336 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. §2253, which provides that a circuit judge or judge may issue a certificate of appealability where "the applicant has made a substantial showing of the denial of a constitutional right." Where the court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claim or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 326; Slack v. McDaniel, 529 U.S. 473, 484 (2000). While the Petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 537 U.S. at 338. In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable; thus Petitioner's claim is not deserving of encouragement to proceed further. Consequently, the Court hereby recommends that Petitioner be DENIED a certificate of appealability.

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS that:

1.   The petition for writ of habeas corpus be DENIED WITH PREJUDICE; and

2.   The Clerk of the Court be DIRECTED to enter Judgment for Respondent; and

3.   A Certificate of Appealability be DENIED.

This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) court days after service of the objections. The Court will then review the

1  Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure
2  to file objections within the specified time may waive the right to appeal the District Court's order.
3  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
4       IT IS SO ORDERED.
5       **Dated:   May 26, 2011**          **/s/ Dennis L. Beck**
                                                  UNITED STATES MAGISTRATE JUDGE